**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deborah Ann Nalley, | No. CV-23-01737-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Deborah Ann Nalley seeks review of a final decision of the Commissioner of Social Security denying her application for disability supplemental security income. Nalley argues the Administrative Law Judge failed to appropriately account for her mental impairments and the total limiting effects of her severe migraines in her residual functional capacity finding. (Doc. 12.) Because the ALJ's disability determination is not based on substantial evidence, the opinion is vacated and remanded for further proceedings.

**I.     Background**

    **a.     Procedural History**

Nalley filed her application for disability insurance on October 9, 2018. (Administrative Record ("AR") 16, Doc. 8-3 at 17.) In her application, Nalley claimed mental and physical impairments of anxiety, depression, migraine headaches, emphysema, chronic obstructive pulmonary disease, and asthma. (AR 20.) After an initial denial on February 23, 2021, Nalley requested review by the Appeals Council, which vacated the decision and required the ALJ to evaluate the medical opinions of Board Certified

Psychiatric-Mental Health Nurse Practitioner Stella Waweru, Nurse Practitioner Imma Nzomo, Physician Assistant Emily Correa, and psychiatrist Dr. James Hicks on remand (AR 159.) Smith and a vocational expert testified before the ALJ on June 27, 2022. (Doc. 12 at 2.) The ALJ denied her claim again on July 22, 2022. (AR 16.)

### a. Five Step Evaluation Process

The ALJ follows a five-step process to determine whether a claimant is disabled under the Act. 20 C.F.R. § 404.1520(a). *See Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (summarizing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *White v. Kijakazi*, 44 F.4th 828, 833 (9th Cir. 2022). At step three, the claimant must show that her impairment or combination of impairments meets or equals the severity of an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant meets her burden at step three, she is presumed disabled and the analysis ends. If the inquiry proceeds to step four, the claimant must show her residual functional capacity ("RFC")—the most she can do with her impairments—precludes her from performing her past work. *Id*. If the claimant meets her burden at step four, then at step five the Commissioner must determine if the claimant is able to perform other work that "exists in significant numbers in the national economy" given the claimant's RFC, age, education, and work experience. *Id*. at § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*.

Nalley met her burden at step one and two. But the ALJ found at step three that Nalley's impairments or combination of impairments did not meet or medically equal a listed impairment. (AR 22.) After reviewing Nalley's medical record and symptom testimony, the ALJ found at step four that Nalley had an RFC to perform medium work except that she can stand and/or walk for six hours and sit for six hours in an eight-hour workday; can lift/carry 50 pounds occasionally and 25 pounds frequently; and must avoid concentrated exposure to extreme temperatures, humidity, noise, fumes, odors, dusts, gases, and hazards. (AR 22.) The ALJ found that Nalley was capable of performing her

past relevant work as a loan officer and underwriter, excluding any work-related activities precluded by her RFC. (AR 27.) The ALJ therefore found Nalley not disabled. (AR 28.)

## II. Standard of Review

The court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance" of evidence and is such that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). The court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## III. Discussion

Nalley argues the ALJ's decision should be remanded for reconsideration because the ALJ's RFC determination (1) failed to account for the total limiting effects of her severe migraines and (2) failed to appropriately account for her depression and anxiety.[1] (Doc. 12 at 1.) Because the ALJ rejected Nalley's testimony without providing clear and convincing reasons and rejected medical opinions about the debilitating effects of her migraines and anxiety/depression limitations without adequately examining the supportability and consistency factors, the case is remanded for additional proceedings.

### a. Nalley's Migraines

#### i. Symptom Testimony

The ALJ found Nalley's medically determinable impairments "could reasonably be expected to cause some of the alleged symptoms," but concluded the "intensity, persistence and limiting effects of these symptoms" were "not entirely consistent with the medical evidence and other evidence in the record." (AR 22.) The ALJ's failure to offer specific, clear, and convincing reasons for rejecting Nalley's symptom testimony is harmful error

---

[1] Nalley's reply brief claims she also argued that the ALJ's severity finding regarding her mental impairments is contrary to law and the facts of this case but this argument does not appear in her opening brief with any specificity. (Doc. 17 at 2 n.1.) Regardless, the court declines to address Nalley's third claimed error in light of the remand. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012).

warranting remand. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022).

An ALJ evaluates the credibility of a claimant's symptom testimony through a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ determines whether the claimant has "presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). The claimant is not required to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (internal quotations omitted). An ALJ may not "'reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain.'" *Id.* at 494–95 (quoting *Burch*, 400 F.3d at 681). If the claimant satisfies this first step and the ALJ does not find "affirmative evidence of malingering," he can only "reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so." *Smartt*, 53 F.4th at 494 (internal quotations omitted).

Here, the ALJ concluded that Nalley's impairments could reasonably be expected to cause some of the alleged symptoms but rejected Nalley's testimony regarding the "intensity, persistence and limiting effects of these symptoms" due to successful treatment when she was insured, contradictory or lacking objective evidence, and inconsistencies in Nalley's testimony. (AR 23.) Because the ALJ did not find affirmative evidence of malingering, Nalley's testimony can only be rejected by offering specific, clear, and convincing reasons for doing so. The ALJ did not do so here.

The ALJ found Nalley "had generally been successful" in managing her migraine symptoms through Botox injections, Almovig, and Floricet, and was "overall stable" by February 2019. (AR 23.) But this description mischaracterizes the record. Although her Almovig use initially reduced her migraines from four to five times a week to once a week in October 2018, the benefits were short-lived and Nalley began to experience "greater than 15 days headaches for months, greater than 8 hours at a time, with migrainous

features." (AR 689.) Nalley's use of Floricet appears to have ultimately exacerbated her symptoms, causing "medical overuse headache[s]." (AR 689.) And although Nalley's neurologist Brian Beck, M.D., advised her that Botox injections would provide a "benefit between day 7 and 14" following the injection and have a "wearing off effect around week 11," Nalley testified that she experienced at least one migraine per week during those periods and multiple migraines before the injections took effect. (AR 24, 51.) Moreover, Nalley lost her insurance and could no longer treat her migraines with Botox injections. (AR 50.) The ALJ acknowledged Nalley's lapse of insurance but wrote "there is no evidence indicating that [Nalley] exhausted all resources available to individuals who cannot afford medical treatment or medication" and that she did not seek medical treatment aligned with the intensity of her alleged symptoms (AR 25.) But a conservative course of treatment "is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment," including insurance coverage. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (finding plaintiff's desire to take a more aggressive treatment, but inability to do so due to a lack of insurance coverage, to be a "good reason."). "[F]ailure to receive medical treatment during the period that [a claimant] had no medical insurance cannot support an adverse credibility finding." *Orn*, 495 F.3d at 638.

The ALJ also discredited Nalley's testimony due to her ability to complete some daily activities. But the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping [or] driving a car . . . does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Here, Nalley's daily activities were consistent with her statements about her symptoms. She reported that she no longer "[has] a life outside [her] home," largely leaving only for doctor appointments or occasional grocery shopping. (AR 507.) She has stopped her hobbies and interests, including sewing, painting ceramics, and crafts, because they "hurt[] [her] head." (AR 510.) And although she can complete some tasks, such as showering every two to three days, her husband

- 5 -

manages the bulk of household chores and care for their dogs. (AR 74–75, 707.)

The ability to prepare simple meals once a day, such as sandwiches and canned food, drive short distances, occasional grocery shopping and laundry, "while taking frequent hours-long rests" and "lying in bed most of the day" is consistent with the symptoms Nalley described in her testimony and an inability to function in a workplace environment. *Garrison*, 759 F.3d at 1016; *see also Hardt v. Astrue*, No. CIV 05-494-TUC-CKJ, 2008 WL 349003, at *3 (D. Ariz. Feb. 6, 2008) (finding the ability to "shop, do laundry, and cook" were not inconsistent with claimant's migraine symptoms).

Finally, the ALJ found Nalley was not credible due to statements that he interpreted to mean that she had attempted to go back to work. (AR 25.) But these conclusions mischaracterize the record. For instance, in citing a report from her psychiatrist, the ALJ speculated that because Nalley "reported her inability to fully function at work was due to anxiety and was requesting an extension of her FMLA," she actually "continued to work in 2020." (AR 25 (citing AR 811).) But that same document shows that Nalley reported "I am so anxious, [I] am not able to get out of the house, the medication did not help so much, I don't think [I] am ready to go back to work." (AR 811.) This, in combination with her FMLA extension request, suggests that she never went back to work and her "inability to fully function at work" was hypothetical. And contrary to his speculation, the ALJ did not find at step two that Nalley engaged in substantial gainful activity at any point in 2020. (AR 19.)

Accordingly, the ALJ did not provide clear, convincing, and specific reasons to discredit Nalley's testimony regarding her migraine symptoms.

### ii. Medical Evidence

The most important factors in evaluating the persuasiveness of medical opinions are "supportability" and "consistency." 20 C.F.R. § 404.1520c(a). Supportability is "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). Consistency is "the extent to which a medical opinion is

'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). The ALJ must "articulate . . . how persuasive" he finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [he] considered the supportability and consistency factors" in reaching these findings. 20 C.F.R. § 404.1520c(b)(2). The ALJ "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

Here, the ALJ found the opinion of Nalley's neurologist, Dr. Brian Beck, that Nalley "could not safely function independently while working with one of her headaches" to be "not persuasive." (AR 27.) The ALJ specifically discredited Dr. Beck's statement that Nalley had "headaches 3-4 days per week (15 days per month), which last[] for 12-36 hours" because it relied "heavily on the subjective report of symptoms and limitations provided by [Nalley]" and were contradicted by "a totality of the evidence." (AR 27.) But the ALJ did not base his supportability and consistency findings on substantial evidence.

As to supportability, "a physician's reliance on a claimant's subjective complaints hardly undermines [his] opinion as to [her] functional limitations, as a patient's report of complaints, or history, is an essential diagnostic tool." *Aponte v. Comm'r of Soc. Sec. Admin.*, No. CV-17-00741-PHX-DGC, 2018 WL 316847, at *3 (D. Ariz. Jan. 8, 2018) (internal quotations omitted). An ALJ may discount such reliance on subjective complaints if "the ALJ finds the applicant not credible," but "there is no evidentiary basis for rejecting the opinion" when it is not "more heavily based on a patient's self-reports than on clinical observations." *Ghanim v. Colvin*, 763 F.3d 1154 (9th Cir. 2014) (accepting medical opinion that incorporated "providers' observations, diagnoses, and prescriptions, in addition to [claimant's] self-reports") (internal quotations omitted).

Dr. Beck's evaluation of Nalley's limitations were supported by his own objective findings and Nalley's subjective symptom reports. The ALJ concluded that Dr. Beck's opinions "rely heavily" on subjective testimony, but this ignores the consistent objective

proof in Dr. Beck's reports. For instance, Dr. Beck observed "a taut band of tissue that [was] palpable" and "exquisitely tender" where Nalley had reported pain. (AR 689.) This was corroborated by his colleague, Jonathan Helman, FNP-C, in a February 28, 2019 report, which noted there was "exquisite tenderness to palpation in left sided occipital and temporal muscles, with palpable taut bands within the bellies of these muscles" that created a "burning" sensation "when palpated." (AR 683.) The ALJ also found that "the totality of the evidence does not support [Nalley's] subjective complaints," specifically relating to the efficacy of Nalley's Botox injections. (AR 26.) But for the reasons discussed above, the ALJ committed harmful error in his evaluation of Nalley's testimony and this is not a justifiable reason for discrediting Dr. Beck's opinions.

The ALJ did not explicitly address the consistency of Dr. Beck's opinion with others in the record but relied on the opinion of Richard Cohen, M.D.—an opinion that contradicts Dr. Beck's—to justify his RFC determination. (AR 26.) Dr. Cohen found that Nalley's daily activities and "normal neurological exam" indicated that she was not disabled. (AR 25.) But normal neurological exams are used to rule out medical conditions that may result in the same or similar symptoms and "unremarkable" tests, such as MRIs, are "consistent with a primary headache disorder diagnosis." SSR 19-4P, 2019 WL 4169635, at *4 (Aug. 26, 2019). And Nalley's daily activities are not sufficient to discount her symptom testimony as discussed above.

Accordingly, the ALJ's analysis of Dr. Beck's opinion was not based upon substantial evidence. This error was not harmless because under Dr. Beck's opinion, Nalley is totally unable to work. (AR 26.)

### b.  Nalley's Depression and Anxiety

The ALJ considered the limitations caused by Nalley's depression and anxiety in his RFC determination and found that they did not reduce her ability to do her past work. (AR 25–27.) Because the ALJ evaluated the medical opinions without adequately examining the supportability and consistency factors, the case is remanded for additional proceedings.

When a claimant has a severe impairment, the ALJ considers the limiting effects of all impairments, "even those that are not severe," in determining the RFC. 20 C.F.R. § 404.1545. "[A]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. And "'there is not an inherent persuasiveness to evidence from [government consultants] over [a claimant's] own medical source(s), and vice versa.'" *Id*. at 791 (quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5844).

Because the ALJ determined Nalley had severe impairments, he was required to consider the limiting effects of her non-severe impairments, including her depression and anxiety. (AR 20.) The ALJ only accepted the medical opinions of three state agency medical consultants between January to May 2019, which largely matched his RFC finding. (AR 27.) He found these opinions were "consistent with the persuasive objective evidence and the claimant's activities of daily living." (AR 27.) The ALJ did not specify which objective evidence or activities of daily living he found these opinions consistent with.

The ALJ discredited any medical opinion that recommended restrictions to Nalley's RFC beyond those adopted by the ALJ. The ALJ determined that the medical opinions of treating providers Waweru, Nzomo, Correa, and Dr. Hicks were not persuasive and of limited relevance because they were generated "in the context of a short-term and long term disability claim [and] are adversarial in nature," relied on Nalley's subjective complaints, and were contradicted by Nalley's activities, state agency medical consultants, and objective medical evidence. (AR 26–27.) The ALJ also found that the medical opinion of reviewing medical consultant Charles Lawrence, Ph.D., was unpersuasive because it was "inconsistent with the evidence of record," specifically a May 8, 2019 report from Nzomo that "revealed largely normal findings" and Nalley's ability to drive a car and grocery shop for an hour. (AR 25.)

As to supportability of the treating providers' opinions, the ALJ noted at the outset

that a "claimant's treating physician in the context of a short-term and long-term disability claim often serves as an advocate for the claimant and describes excessive limitations to enhance the claimant's financial recovery." (AR 26.) The ALJ did not provide any support for this speculation but concluded that the treating providers positions were "extreme" in comparison to the medical record and Nalley's daily activities. (AR 27.) But nowhere in the regulations is an articulated principle that a treating provider who renders an opinion in a short- or long-term proceeding is entitled to depreciated credibility. Instead, these opinions must be evaluated along with all medical opinions. 20 C.F.R. § 404.152c (a). *See also Villa v. Astrue,* No. CV 09-03983-VBK, 2009 WL 5088749, at *1, *3 (C.D. Cal. Dec. 16, 2009) (declining to discredit medical opinions "in a workers compensation litigation setting, which is highly adversarial in nature"). Separately, the ALJ cannot reject these opinions due to their incorporation of Nalley's subjective symptom reports because they were validated by clinical interviews and mental status evaluations. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (for psychiatric diagnoses, clinical interviews are objective measures and "cannot be discounted" as self-reports).

For the reasons described above, the ALJ's conclusion was not based upon substantial evidence and will be remanded for reconsideration.

**IV.   Appropriate Remedy**

Nalley requested only that her case be remanded for reconsideration of the evidence. (Doc. 12 at 25.) Because additional proceedings may remedy defects in the original decision—namely the ALJ's failure to offer clear and convincing reasons for rejecting Smith's testimony and to validate his supportability and consistency findings of Dr. Beck's opinion with substantial evidence—remand for reconsideration is appropriate.

/

/

/

/

/

Accordingly,

**IT IS ORDERED** vacating and remanding the decision of the ALJ.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 8th day of October, 2024.

*Honorable Krissa M. Lanham*
*United States District Judge*